## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| PARALLEL SEPARATION INNOVATIONS LLC, <br><br> Plaintiff, <br><br> v. <br><br> SCHLUMBERGER N.V. (SCHLUMBERGER LIMITED); SCHLUMBERGER TECHNOLOGY CORPORATION; and M-I L.L.C. dba M-I SWACO, <br><br> Defendants. | Civil Action No. 2:14-cv-00549 <br><br> JURY TRIAL DEMANDED |

## SCHLUMBERGER DEFENDANTS' MOTION TO DISQUALIFY

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................1

II.  FACTUAL BACKGROUND ......................................................................................2

   A.   Rutherford's Background and Employment at Schlumberger. ................................2

      1.   Rutherford advised Schlumberger regarding M-I SWACO's MD-3 Shale Shaker product, the product accused of infringement here. ......................................................3

      2.   While Chief IP Counsel for Schlumberger, Rutherford advised Schlumberger regarding patent litigation and licensing policies. ............................................................4

   B.   Acacia Hired Rutherford to Expand into the Energy Market...................................5

   C.   The Western District Action and Rutherford's Involvement Therein. .....................5

   D.   This Lawsuit.............................................................................................................7

   E.   Acacia Has Not Walled-Off Rutherford from Participating in Lawsuits Against Schlumberger. ........................................................................................................8

III. LEGAL STANDARD ................................................................................................8

IV.  DISCUSSION ...........................................................................................................10

   A.   Acacia's In-House Legal Department Is Subject to the Court's Jurisdiction By Virtue of Their Substantial and Ongoing Participation In This Matter. .........................10

   B.   Rutherford Is Subject to An Incurable Conflict Based on Representing Schlumberger in Matters Substantially Related to This Lawsuit.................................................11

   C.   All Counsel Within Acacia's In-House Legal Department, Including Counsel Employed By Acacia Subsidiaries, Suffer From Incurable Conflicts of Interest Pursuant to the Rule of Imputed Disqualification...................................................12

      1.   Rutherford Suffers From a Conflict of Interest That Is Imputed to All Other Counsel Within Acacia's In-House Legal Department.....................................................13

      2.   Imputation of Rutherford's Conflict to All Acacia In-House Counsel is Warranted Despite the Existence of PSI as a Shell Corporation. ....................................13

   D.   The Collins Edmonds Firm Must Also Be Disqualified.........................................14

V.   CONCLUSION.........................................................................................................15

i

# TABLE OF AUTHORITIES

## Cases

*City of El Paso v. Salas-Porras Soule,*
   6 F. Supp. 2d 616 (W.D. Tex. 1998) ....................................................... 9

*Dean Witter Reynolds, Inc. v. Clements, O'Neill, Pierce & Nickens, L.L.P.,*
   No. H-99-1882, 2000 WL 36098499 (S.D. Tex. Sept. 8, 2000)...................... 13

*Dynamic 3D Geosolutions LLC v. Schlumberger Limited (Schlumberger N.V.) et al.,*
   No. 1:14-cv-112 (W.D. Tex.)................................................................ 5

*E.F. Hutton & Co. v. Brown,*
   305 F. Supp. 371 (S.D. Tex. 1969)........................................................ 10

*Evolution Intelligence, Inc. v. Facebook, Inc.,*
   6:12-cv-784-MHS-CMC, Doc. 108 (E.D. Tex. 2013) ................................. 9

*Horaist v. Doctor's Hosp. of Opelousas,*
   255 F.3d 261 (5th Cir. 2001)................................................................ 8

*In re Am. Airlines, Inc.,*
   972 F.2d 605 (5th Cir. 1992)......................................................... *passim*

*In re Am. Home Prods. Corp.,*
   985 S.W.2d 68 (Tex. 1998) ............................................................. 2, 15

*In re Apeldyn Comm'cn,*
   391 F. App'x 873 (Fed. Cir. 2010) ...................................................... 12

*In re Dresser Indus., Inc.,*
   972 F.2d 540 (5th Cir. 1992)............................................................ 8, 9

*In re Guar. Ins. Servs., Inc.,*
   343 S.W. 3d 130 (Tex. 2011) ............................................................ 13

*Islander E. Rental Prog. v. Ferguson,*
   917 F. Supp. 504 (S.D. Tex. 1996) ...................................................... 9

*JuxtaComm-Texas Software, LLC v. Axway, Inc.,*
   No. 6:10-cv-11, 2010 WL  4920909 (E.D. Tex. Nov. 29, 2010) ...................... 9

*Ledwig v. Cuprum S.A.*,
 SA-03-CA-542-RF, 2004 WL 573650 (W.D. Tex. Jan. 28, 2004)................................................. 12

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
 No. 2:99-CV-168, 2002 U.S. Dist. LEXIS 27557 (E.D. Tex. 2002)........................................... 10

*Quicken Loans v. Jolly*,
 2:07-CV-13143, 2008 WL 2566373 (E.D. Mich. June 24, 2008).................................................... 3

*Rembrandt Techs., LP v. Comcast Corp.*,
 No. 2:05-cv-443, 2007 WL 470631 (E.D. Tex. Feb. 8, 2007) ........................................................ 9

*Talon Research, LLC v. Toshiba Am. Elec. Components, Inc.*,
 No. 11-04819, 2012 WL 601811 (N.D. Cal. Feb. 23, 2012)........................................................ 12

*Vinewood Capital, LLC v. Sheppard Mullin Richter & Hampton, LLP*,
 735 F. Supp. 2d 503 (N.D. Tex. 2010) ...................................................................................... 14

**Rules**

ABA Model R. 1.09 .................................................................................................................... 9

Tex. R. Disciplinary P. 1.09........................................................................................................ 9

## I.    INTRODUCTION

All in-house and outside counsel appearing on behalf of Plaintiff Parallel Separation Innovations ("PSI") must be disqualified because they are presumed to be imputed with the conflict of interest infecting Charlotte H. Rutherford ("Rutherford"). Rutherford is currently an in-house attorney at Acacia Research Group ("ARG"), a subsidiary of Acacia Research Corporation ("ARC"), PSI's parent (all collectively, "Acacia"). Immediately prior to working for Acacia, Rutherford spent seven years as in-house intellectual property counsel for Schlumberger. During those years she served as Deputy General Counsel for Intellectual Property—the chief IP officer—and prior to that as Senior Counsel, responsible for global IP licensing and litigation. By hiring Rutherford to file patent lawsuits against Schlumberger, Acacia knew or should have known that Rutherford would be in a position to violate her ethical duty of loyalty to her former client.

Rutherford is subject to disqualification from representing Acacia in this case because it raises issues substantially related to her prior representation of Schlumberger. *See In re Am. Airlines, Inc.*, 972 F.2d 605, 611 (5th Cir. 1992) ("[A] a lawyer who has given advice in a substantially related matter must be disqualified . . . ."). Documents that Rutherford possessed while employed by Schlumberger confirm that: (1) Rutherford knows a massive amount of Schlumberger's privileged, confidential, secret, proprietary, and trade secret information in general; (2) Rutherford represented Schlumberger in intellectual property analyses regarding M-I SWACO's MD-3 Shale Shaker, the very product at issue in this case; (3) Rutherford has deep familiarity with Schlumberger's privileged and confidential information regarding its efforts to monetize, enforce, and strengthen its patent portfolio, and to defend itself from intellectual property claims of others; and (4) Rutherford has extensive experience with Schlumberger's patent litigation and settlement strategies. Accordingly, Rutherford should be disqualified from participating in this litigation.

Rutherford recently confirmed via sworn declaration that she "will not be[] an attorney in PSI's suit against Schlumberger." Ex. 1. This declaration is too little, too late, and cannot cure the harm that has already been done. Any participation by Rutherford in this lawsuit, whether as "an attorney" or otherwise, is a violation of her ethical duties to Schlumberger. Accordingly, disqualification is necessary to give effect to Rutherford's declaration in this Court and to further ensure that she does not participate in this lawsuit *in any way.*

Rutherford's conflict is irrebuttably imputed to all other Acacia attorneys, including the attorneys representing PSI here, and Fifth Circuit law does not permit an ethical screen to overcome this irrebuttable imputation. Regardless, Acacia has not screened Rutherford; Plaintiff PSI recently confirmed in discovery that PSI does not possess information about a screen between Rutherford and any Acacia entity (including PSI). If PSI is unaware of an ethical screen, then it must not exist. Accordingly, all lawyers in Acacia's legal department suffer from an incurable conflict of interest and must be disqualified.

PSI's outside counsel, Collins, Edmonds & Pogorzelski ("Collins Edmonds"), has had substantive conversations and jointly prepared for trial with Acacia. Those contacts raise a rebuttable presumption that Acacia's disqualified counsel shared confidential information with the Collins Edmonds firm. *See In re Am. Home Prods. Corp.*, 985 S.W.2d 68, 77-78 (Tex. 1998). The presumption likely cannot be overcome because Gary Fischman interfaces directly with the Collins Edmonds firm. Ex. 2 ¶ 4. Thus, Collins Edmonds must also be disqualified.

## II.     FACTUAL BACKGROUND

### A.     Rutherford's Background and Employment at Schlumberger.

Rutherford has been a member of the Texas Bar since 1988. Ex. 3, 113:5-21. Rutherford served as Schlumberger's Senior Counsel, Licensing and Litigation from 2006 to 2009. In 2009, she was promoted to Deputy General Counsel for Intellectual Property—the chief IP officer of the company. *Id.* at 141:25-142:5. In this role, Rutherford was responsible for "developing and

implementing . . . [Schlumberger's] worldwide IP strategy." Ex. 4. She also developed, implemented, and oversaw Schlumberger's IP programs, including monetization, enforcement (including litigation), and operation of Schlumberger's business segments. *Id.* Rutherford was also "[r]esponsible for protecting and preserving . . . [Schlumberger's] IP assets including patents, trademarks and trade secrets by establishing and maintaining best practices and procedures." *Id.* During her seven years as an IP lawyer for Schlumberger, Rutherford represented Schlumberger in matters substantially related to PSI's patent infringement claims, and obtained confidences that are jeopardized by this lawsuit.

1.   **Rutherford advised Schlumberger regarding M-I SWACO's MD-3 Shale Shaker product, the product accused of infringement here.**

Rutherford advised Schlumberger regarding M-I SWACO's MD-3 Shale Shaker product— the same product that is accused of infringing in this case. At Rutherford's direction, M-I SWACO commissioned a patent landscape study for shale shaker technologies, the results of which are included in M-I SWACO's intellectual property ("IP") playbook. SLB Log 1 at 67-87.[1] In 2011, Rutherford asked for and was provided M-I SWACO's IP playbook. SLB Log 1.  By commissioning this study and participating in the subsequent analysis of the data, Rutherford (1) obtained knowledge of the patent filings for oilfield shaker technologies that show a large number of diverse patent owners, and (2) concluded that a smaller competitor with a single high quality patent could be disruptive to the shale shaker market. SLB Log 1, at 52, 81. Shortly after receiving M-I SWACO's IP playbook, Rutherford received a completed M-I SWACO competitive landscape and IP Strategy document from M-I SWACO's in-house IP counsel, Carter White. This document provided an

---

[1]      Schlumberger provides a log of privileged/confidential documents as Ex. 5 ("SLB Log") in order to preserve (and not waive) the attorney-client/work product privilege. Schlumberger will produce, for in camera review, evidence of the substantial similarity between Rutherford's representation of Schlumberger and the instant case. *See Quicken Loans v. Jolly*, 2:07-CV-13143, 2008 WL 2566373, at *4 (E.D. Mich. June 24, 2008) (the "moving party could proffer for in camera inspection certain confidential information provided to its prior counsel in order to demonstrate the substantially similarity of the two litigations").

analysis of the competitive landscape for shale shakers and shaker screens and indicated the competitive players in the market included Schlumberger, Axiom, and National Oilwell Varco ("NOV")—i.e., the three companies that PSI decided to sue in this Court after Rutherford joined Acacia.  SLB Log 10-12, 16-17.

Via IP Strategy and IP Strategy update documents, Rutherford knew how the MD-3 shaker technology fit in M-I SWACO's strategic business plan. SLB Log 20-21. In particular, MD-3 shaker technology was identified for "potential litigation – combined offensive and defensive positioning of IP on worldwide basis." SLB Log 21, at 9. Further, the MD-3 Shale Shaker was identified in M-I SWACO's IP strategy for value creation, wherein a specific tender had been made to an offshore drill platform operator with the expectation that it would position the MD-3 Shale Shaker to be required on new platforms and platform upgrades. *Id.*

## 2. While Chief IP Counsel for Schlumberger, Rutherford advised Schlumberger regarding patent litigation and licensing policies.

Rutherford was directly involved in Schlumberger's patent enforcement and licensing procedures. *See* SLB Log 45. Schlumberger's patent policy required notice of any potential infringement issues to be provided to the Deputy General Counsel for IP—Rutherford from 2009-13. *Id.* at 83. Rutherford approved at least five separate offensive patent enforcements. *See* SLB Log 38-42. As Senior Counsel from 2006-09, she was the in-house counsel directly in charge of specific intellectual property litigations (i.e., supervising and, if necessary, settling cases; akin to Gary Fischman's role in this case). Ex. 6 ¶¶ 2-5. Rutherford gained intimate knowledge of Schlumberger's litigation-driven licensing practices, including Schlumberger's royalty and settlement rates. *Id.* ¶¶ 10-11, 14-15, 17. In 2009, Rutherford created and was in charge of Schlumberger's IP Out-licensing Program, called "Project MIDAS." *See* SLB Log 30-31. Through the MIDAS program, Rutherford directed Schlumberger's efforts to monetize its patent portfolio by litigating patents, negotiating patent licenses, and settling patent enforcement actions. *Id.* In 2009, Rutherford represented

Schlumberger in contracting with CRA International to assist with Schlumberger's MIDAS project. *See* SLB Log 32. Rutherford's approval was required before a patent could be licensed or litigated under the MIDAS project. *See* SLB Log 38-42.

## B.    Acacia Hired Rutherford to Expand into the Energy Market.

Acacia is an established patent assertion entity. In 2013, Acacia planned to add new patent portfolios in "Energy Extraction" technology. Ex. 7, at 13. In June 2013, Acacia hired Rutherford to "focus on monetizing energy technologies to foster innovation while increasing [Acacia's] competitiveness in the energy market." Ex. 8. Acacia hired Rutherford because of her "extensive experience in managing intellectual property issues at leading U.S. companies." *Id.* In December 2013, Rutherford opened Acacia's Houston office to "monetize[e]" Acacia's energy related patents. Ex. 3, 241:1-21; *see also* Ex. 9. Shortly thereafter, Rutherford hired attorney Gary Fischman to work in Acacia's Houston office and report directly to Rutherford. *Id.* at 41:7-24, 98:10-20, 102:16-20, 103:20-104:4. Fischman is the Acacia attorney responsible for managing this lawsuit and Acacia's outside counsel, the Collins Edmonds firm. *Id.* at 80:19-81:5; *see also* Ex. 2 ¶ 4.

Shortly after Rutherford joined Acacia, Acacia set up two new shell companies that separately brought patent infringement actions against Schlumberger. *See* Dkt. 1; Dkt. 1, Complaint, *Dynamic 3D Geosolutions LLC v. Schlumberger Limited (Schlumberger N.V.) et al.*, No. 1:14-cv-112 (W.D. Tex.) (asserting U.S. Patent No. 7,986,319 ("the '319 Patent")) ("Western District Action"). In the Western District Action, Rutherford participated in the decision to acquire the '319 Patent asserted in that case. *See* Ex. 3, 79:17-81:1, 82:8-17. Here, Acacia held the '582 Patent for some time (without suing) and then decided to sue Schlumberger only after Rutherford joined Acacia. Ex. 1.

## C.    The Western District Action and Rutherford's Involvement Therein.

In the Western District Action, the court issued its standard scheduling order staying all discovery except for discovery related to claim construction. Dkt. 25, Western District Action, ¶ 3. Months later, the court held a hearing on the disqualification issue (which had been raised near the

beginning of the case), and opened discovery to allow the filing of Schlumberger's motion to disqualify. *See* Dkt. 44, Western District Action, at 36:14-38:18.    Schlumberger subpoenaed Rutherford, Fischman, and ARG with subpoenas issued from the Southern District of Texas (Rutherford and Fischman) and from the Central District of California (ARG).

Discovery in the Western District Action casts considerable doubt on representations made by the Collins Edmonds firm, counsel for Acacia's subsidiary, Dynamic 3D Geosolutions, regarding an alleged ethical screen imposed on Rutherford. The Collins Edmonds firm told the court:

> Ms. Rutherford has been screened from any discussion with anyone at my [Collins Edmonds] firm that involves Schlumberger or any of its products or technology; and that no one at my firm has ever had a conversation with Ms. Rutherford about anything related to Schlumberger or its technology other than the fact that we had to be screened, much less any kind of substantive conversation.

Ex. 10, 8:17-23.

In contrast, Rutherford testified under oath that: (1) she "received recommendations from the Collins Edmonds firm, [and] from Mr. Fischman . . . to acquire" the '319 Patent; (2) she "concur[red] with the recommendation to acquire the '319 Patent"; (3) she participated in a presentation that "was made by outside Counsel [Collins Edmonds]"; and (4) that the presentation referred to Schlumberger. Ex. 3, 79:17-81:1, 82:8-17. Rutherford further testified she "**concurr[ed] with the recommendation from outside counsel** [Dynamic 3D's counsel, Collins Edmonds] **and in-house counsel** [Gary Fischman] **to acquire the '319 Patent and to sue Schlumberger.**" Ex. 11, 31:11-18; *see also id.* at 27:10-12 ("I concurred with the decision by the company to acquire the '319 Patent and to enforce the patent through litigation"); 27:2-4 (Rutherford made a "communication [which] was the concurrence to acquire and file the litigation against Schlumberger by [Plaintiff] Dynamic 3D"). Rutherford also communicated with Plaintiff's counsel.

> Q.    Did you tell anyone outside of Acacia about your decision to concur in the acquisition of the '319 [Patent] or the filing of the lawsuit against Schlumberger?

A.      So if you consider outside counsel to be outside of Acacia and outside
counsel was on -- in that meeting or a conversation about whether or not to
acquire and litigate, then I would say, yes, but it was only outside counsel.

*Id.* at 35:7-23 (objections omitted).

Acacia produced documents contradicting Dynamic 3D's contention that Rutherford "has

not participated in the present lawsuit by Dynamic against Schlumberger in any capacity." Dkt. 61,

No. 1:14-cv-00112, at 7 (W.D. Tex. Aug. 5, 2014) (attached as Ex. 12). The documents produced by

Fischman, ARG, and Rutherford revealed swaths of emails between Fischman and Rutherford

related to the Western District Action. In one of the most egregious cases, Fischman forwarded the

draft complaint against Schlumberger (prepared by outside counsel) to Rutherford for review. *See*

Dkt. 114-29, No. 1:14-cv-00112 (W.D. Tex. Nov. 26, 2014) (attached as Ex. 13). Rutherford gave

her approval and asked Fischman to convey that approval to ARG's outside law firm. *Id.*

Judge Yeakel held a hearing on the disqualification motion. No decision has been entered.

**D.      This Lawsuit.**

The attorneys working on behalf of PSI in this lawsuit include at least the attorneys at the

Collins Edmonds firm and Acacia's in-house counsel Fischman. Ex. 2 ¶ 4. At the outset of this

lawsuit (and before discovery opened), Schlumberger informed PSI's counsel of the disqualification

issue and Schlumberger's plan to take discovery related thereto. Ex. 14. Within a week after

discovery opened on Nov. 17, 2014, Schlumberger served subpoenas on Rutherford, Fischman, and

ARG. Schlumberger's subpoenas included requests seeking information related to any ethical screen

that ARG may have established with respect to Rutherford, Rutherford's involvement in this case,

and ARG's pattern of hiring in-house counsel to assist in suing the attorney's former client.

All three parties vehemently opposed the subpoenas, filing motions to quash in the Southern

District of Texas. On December 12, 2014, Judge Hughes held a hearing to discuss these motions. At

the hearing, the court instructed Rutherford, Fischman, and ARG to submit "heartfelt" declarations

in response to Schlumberger's subpoena requests that relate to the disqualification issue. *See* Ex. 15,

36:4-24 (Rutherford and ARG), 39:6-40:2 (Fischman and ARG). The court aimed to have the parties

provide Schlumberger with the information it needed to assess the disqualification issue. *Id.*.

Rutherford, Fischman, and ARG submitted a declaration wherein Rutherford agreed not to be "an

attorney in PSI's suit against Schlumberger" and to "not involve herself in patent lawsuits against

Schlumberger for the next two years." Ex. 1. The declaration is tellingly silent regarding Rutherford's

prior involvement in this lawsuit or whether Rutherford continues to participate in this lawsuit in

some capacity other than as "an attorney." The declaration simply cannot remove the imputed

conflict of interest infecting Fischman, all other Acacia in-house attorneys, and PSI's outside

counsel. Nevertheless, Schlumberger agreed to withdraw its subpoena as to Rutherford. Unlike

Rutherford, Fischman and ARG did not agree to cease representation of PSI in this lawsuit.

> ### E.   Acacia Has Not Walled-Off Rutherford from Participating in Lawsuits Against Schlumberger.

To this day, Acacia has never indicated that it has established an ethical screen between

Rutherford and the other Acacia attorneys (in-house or outside counsel). Rather, Rutherford

admitted to communicating with the Collins Edmonds firm regarding at least Acacia's Western

District lawsuit against Schlumberger. *See supra*, Part II.C. Schlumberger also served interrogatories

on PSI seeking specifics of any ethical screen between Rutherford and any Acacia entity (including

PSI). Ex. 16. PSI failed to provide any information related to an ethical screen, stating that PSI did

not possess any such information. *Id.* at 4-5. That PSI does not know about an ethical screen

prohibiting Rutherford's participation in this case, confirms that no such screen exists.

## III.   LEGAL STANDARD

A "[c]ourt is obliged to take measures against unethical conduct occurring in . . . any

proceeding before it." *Am. Airlines*, 972 F.2d at 611 (citations omitted). The Court should analyze

motions to disqualify by applying standards developed under federal law. *In re Dresser Indus., Inc.*, 972

F.2d 540, 544 (5th Cir. 1992); *Am. Airlines*, 972 F.2d at 610. Relevant ethical canons in the Fifth

Circuit include: "(1) the local rules for the [district court]; (2) the American Bar Association's ('ABA's') Model Rules of Professional Conduct [('ABA Model Rules')]; (3) the ABA's Model Code of Professional Responsibility [('ABA Model Code')]; and (4) the state rules of conduct." *Horaist v. Doctor's Hosp. of Opelousas,* 255 F.3d 261, 266 (5th Cir. 2001). Although the Eastern District of Texas local rules incorporate by reference the Rules Governing the State Bar of Texas and the Texas Disciplinary Rules of Professional Conduct (*see* L.R. AT-2(a)), the Fifth Circuit has shown a preference for the more stringent ABA Model Rules. *Dresser Indus.,* 972 F.2d at 544. When there is conflict among the relevant ethical canons, Fifth Circuit and Texas District courts apply the more stringent of the standards. *See id.*; *JuxtaComm-Texas Software, LLC v. Axway, Inc.,* No. 6:10-cv-11, 2010 WL 4920909, *2 (E.D. Tex. Nov. 29, 2010) (for concurrent conflicts of interest, "[t]he Fifth Circuit has shown a preference for the more stringent ABA Model Rule"); *Rembrandt Techs., LP v. Comcast Corp.,* No. 2:05-cv-443, 2007 WL 470631 (E.D. Tex. Feb. 8, 2007) (same); *Evolution Intelligence, Inc. v. Facebook, Inc.,* 6:12-cv-784-MHS-CMC, Dkt. 108, *4 (E.D. Tex. 2013) (unreported).

ABA Model Rule 1.09(a) and Texas Rule 1.09(a)(3) similarly provide that an attorney is prohibited from representing a new client adverse to a former client in the same or a substantially related matter. The movant must prove <u>either</u> that the present and former matters are substantially related or that the former attorney actually possesses relevant confidential information that is jeopardized by the current representation. *See Am. Airlines,* 972 F.2d at 615; *Islander E. Rental Prog. v. Ferguson,* 917 F. Supp. 504, 510 (S.D. Tex. 1996); *see also* ABA Model R. 1.09; Tex. R. Disciplinary P. 1.09. Even when matters are not substantially related, a former client may still disqualify former counsel by showing that confidential information was provided to counsel and that the confidential information is relevant to the new matter. *See City of El Paso v. Salas-Porras Soule,* 6 F. Supp. 2d 616, 624 (W.D. Tex. 1998); *Islander E. Rental Prog.,* 917 F. Supp. at 510.

Under the substantially related test, the movant must prove: "1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and 2) a substantial relationship between the subject matter of the former and present representations." *Am. Airlines*, 972 F.2d at 614. In determining if the present and former matters are substantially related, courts have identified three relevant factors: "(1) the factual similarities between the current and former representations, (2) the similarities between the legal question posed, and (3) the nature and extent of the attorney's involvement with the former representation." *Power Mosfet Techs., L.L.C. v. Siemens AG*, No. 2:99-CV-168, 2002 U.S. Dist. LEXIS 27557, at *2 (E.D. Tex. 2002). If the movant establishes that the prior matter is substantially related to the present matter, an irrebuttable presumption arises that relevant confidential information was disclosed during the former representation. *Am. Airlines*, 972 F.2d at 614. A second irrebuttable presumption is that confidences obtained by an individual lawyer will be shared with other members of his firm. *Id.*

## IV.  DISCUSSION

### A.  Acacia's In-House Legal Department Is Subject to the Court's Jurisdiction By Virtue of Their Substantial and Ongoing Participation In This Matter.

This Court has jurisdiction to disqualify Acacia's in-house attorneys and to take appropriate action to remedy their unethical conduct even though they have not entered a formal appearance in this matter. In *E.F. Hutton & Co. v. Brown*, 305 F. Supp. 371 (S.D. Tex. 1969), the Southern District of Texas held that a disciplinary order is enforceable against even an out-of-state attorney so long as its issuance comports with due process. *Id.* at 379. This test was satisfied where an out-of-state firm had, *inter alia*, (1) been available to consult with the plaintiff and its counsel of record regarding the litigation; and (2) represented the plaintiff in government investigations relating to the subject-matter of the lawsuit. *Id.* at 380. On these grounds, the *E.F. Hutton* court found that the out-of-state firm's participation in the matter was "sufficient to constitute the practice of law" and, as a result, the court found that the New York firm had submitted to its jurisdiction. *Id.* at 381.

Here, Acacia's in-house legal department, including at least Fischman, has participated in PSI's patent infringement suit against Schlumberger. Ex. 1; Ex. 2 ¶ 4. Thus, Acacia's in-house legal department has practiced law before the Court, has submitted to the Court's jurisdiction, and is subject to disqualification or any other remedy that the Court may impose in response to its unethical conduct. *See E.F. Hutton*, 305 F. Supp. at 381.

### B.   Rutherford Is Subject to An Incurable Conflict Based on Representing Schlumberger in Matters Substantially Related to This Lawsuit.

Rutherford is subject to disqualification because both prongs of the "substantial relationship" test are met: (1) she had an actual attorney-client relationship with Schlumberger; and (2) there is a substantial relationship between the subject matter of her prior representation of Schlumberger and her representation of Acacia in this lawsuit. *See Am. Airlines*, 972 F.2d at 614-15 (discussing the two prongs of the "substantial relationship" test under Texas Rule 1.09(a)(3)). There is no dispute as to the first prong. From 2006-2009, Rutherford was Senior Counsel responsible for Schlumberger's global IP licensing and litigation. From 2009-2013, Rutherford was the Deputy General Counsel for Intellectual Property, Schlumberger's chief IP officer.

The second prong is also met because Rutherford represented Schlumberger in matters related to M-I SWACO's MD-3 Shale Shaker product (i.e., the product alleged to infringe the '582 Patent in this lawsuit), and received confidential information regarding Schlumberger's "playbook" for handling M-I SWACO intellectual property disputes. In particular, Rutherford served as Schlumberger's Deputy General Counsel for Intellectual Property; managed Schlumberger's worldwide intellectual property strategies, including intellectual property issues related to M-I SWACO's MD-3 Shale Shaker; supervised M-I SWACO's intellectual property counsel to implement M-I SWACO's intellectual property policies and playbook; commissioned and analyzed a patent landscape study for M-I SWACO's shale shaker technology; and regularly participated in IP

Strategy updates through which she learned how the MD-3 shaker technology fit in M-I SWACO's strategic business plan. *See supra*, Part II.A.

The work that Rutherford performed as Schlumberger's Deputy General Counsel for Intellectual Property falls squarely within work that has been deemed substantially related by other courts in patent infringement lawsuits. *See, e.g.*, *In re Apeldyn Comm'cn*, 391 F. App'x 873, 875 (Fed. Cir. 2010) (affirming grant of motion to disqualify based on finding that, during prior representation, attorney had collected and reviewed specimens and documentation at issue in the suit, and had been exposed to factors that former client considers important in settlement); *Talon Research, LLC v. Toshiba Am. Elec. Components, Inc.*, No. 11-04819, 2012 WL 601811 (N.D. Cal. Feb. 23, 2012) (finding substantial similarity based on, *inter alia*: (1) overlap in products accused in prior representation and those accused in action before the court; and (2) attorney had insight into risk aversion, or not, of former client and was now in position to capitalize such insight).

There can be no doubt as to the substantial relationship between Rutherford's prior representation of Schlumberger and the subject matter of this lawsuit.  As a result, this Court need "not inquire into the nature or extent" of the confidences received. *Am. Airlines*, 972 F.2d at 617-18. Rather, it is irrebuttably presumed that Schlumberger disclosed relevant confidences to Rutherford. *Ledwig v. Cuprum S.A.*, SA-03-CA-542-RF, 2004 WL 573650 (W.D. Tex. Jan. 28, 2004) ("[T]he court will irrebuttably presume that relevant confidential information was disclosed during the former period of representation."); *see also Am. Airlines*, 972 F.2d at 617-18 ("The court will assume that . . . confidences were disclosed . . . .  Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.").

**C.**    **All Counsel Within Acacia's In-House Legal Department, Including Counsel Employed By Acacia Subsidiaries, Suffer From Incurable Conflicts of Interest Pursuant to the Rule of Imputed Disqualification.**

Under Texas Disciplinary Rule 1.09(b), no attorney within a firm shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so under Rule 1.09(a). The comments clarify that this rule applies when an attorney moves from one firm to another. Tex. Disc. R. of Prof'l Conduct 1.09, cmt. 5 ("[A]ll other lawyers who are or become members of or associates with that lawyer's <u>new firm</u> are treated in the same manner by paragraph (b)." (emphasis added)); *see also Dean Witter Reynolds, Inc. v. Clements, O'Neill, Pierce & Nickens, L.L.P.*, No. H-99-1882, 2000 WL 36098499, at *7 (S.D. Tex. Sept. 8, 2000); *In re Guar. Ins. Servs., Inc.*, 343 S.W.3d 130, 134 (Tex. 2011). The Rules broadly define "firm" to include "a lawyer or lawyers employed in the legal department of a corporation." Tex. Disc. R. of Prof'l Conduct, Terminology.

### 1. Rutherford Suffers From a Conflict of Interest That Is Imputed to All Other Counsel Within Acacia's In-House Legal Department.

This Court should disqualify all counsel within Acacia's in-house legal department from representing Acacia in this matter. Rutherford suffers from a conflict of interest under Rule 1.09(a) of the Texas Rules based on her prior representation of Schlumberger in matters that are substantially related to the instant litigation. *See supra* Part IV.B. That conflict arises from her personal representation of Schlumberger in matters relating to M-I SWACO's MD-3 Shale Shaker. Therefore, Rutherford's conflict is imputed to all other counsel within Acacia's in-house legal department. Tex. Disc. R. of Prof'l Conduct 1.09(b). Rutherford's recent representation that she "will not be an attorney" in this case (Ex. 1) is too little, too late, and is legally insufficient to save the other Acacia attorneys from disqualification because it fails to address the harm that has already been done. It is silent as to Rutherford's prior involvement in this case, and simply cannot remove the conflict that is irrebuttably imputed to all Acacia attorneys.

### 2. Imputation of Rutherford's Conflict to All Acacia In-House Counsel is Warranted Despite the Existence of PSI as a Shell Corporation.

That PSI is a separate corporation does not shield Acacia's in-house counsel from disqualification. In fact, PSI has admitted that Fischman "is a Vice President, Licensing with Acacia

Research Group, who handles licensing and patent enforcement for PSI" and "who is associated with PSI." Ex. 16, at 9-10. Fischman also admitted that he is "personally involved in helping formulate PSI's litigation strategy in close corroboration with outside counsel." Ex. 2 ¶ 4. PSI is merely a shell corporation by which Acacia's legal department is pursuing the present suit . Accordingly, the Court should look beyond that shell corporation, impute Rutherford's conflict to all Acacia in-house counsel, and disqualify such counsel from further participation in this matter.

### D.    The Collins Edmonds Firm Must Also Be Disqualified.

Texas federal courts have developed a standard for the disqualification of co-counsel based on both Fifth Circuit and Texas law. *Vinewood Capital, LLC v. Sheppard Mullin Richter & Hampton, LLP*, 735 F. Supp. 2d 503, 524 (N.D. Tex. 2010). The "party seeking disqualification must first demonstrate that there were substantive conversations between disqualified counsel and co-counsel, joint preparation for trial by those counsel, or the apparent receipt by co-counsel of confidential information." *Am. Home. Prods.*, 985 S.W.2d at 81. "A rebuttable presumption then arises that disqualified counsel shared confidential information with co-counsel . . . [which] the party resisting disqualification of co-counsel may rebut . . . by providing probative and material evidence that confidential information was not disclosed to them." *Id.*

Here, there is no doubt that attorneys in the Collins Edmonds firm had substantive conversations regarding this action with Acacia in-house attorneys. First, Fischman admitted that he "advised PSI in the decision to sue Schlumberger Ltd. and affiliated entities" and that he "remain[s] personally involved in helping formulate PSI's litigation strategy in close collaboration with outside counsel." Ex. 2 ¶ 4. Second, Rutherford has likely communicated with Collins Edmonds regarding this lawsuit. In response to Schlumberger's subpoena, Rutherford provided a sworn declaration stating only that she "is not, and will not be, an attorney is PSI's suit against Schlumberger." Ex. 1. This carefully-crafted statement says nothing about past interactions with PSI or its attorneys.

Based on Rutherford's participation in the Western District Action, it is likely that she has participated in this lawsuit. There, Acacia (Dynamic 3D) represented that Rutherford "has not participated in the present lawsuit by Dynamic against Schlumberger in any capacity." Ex. 12, at 7. Nevertheless, documents produced by Fischman, ARG, and Rutherford revealed swaths of emails between Fischman and Rutherford related to that lawsuit. In one of the most egregious cases, Fischman forwarded the draft complaint against Schlumberger (prepared by outside counsel) to Rutherford for review. Ex. 13. Rutherford gave her approval and asked Fischman to convey her approval to ARG's outside law firm. *Id.* Given Rutherford's behavior in that case, it is not unreasonable to think that similar communications have occurred related to this case.

Acacia attorneys—i.e., attorneys who are subject to disqualification under the ethical rules— have communicated either directly or indirectly with the Collins Edmonds firm. Accordingly, the Court should presume that Rutherford and/or Fischman shared Schlumberger's confidences with Collins Edmonds and disqualify Collins Edmonds from representing Acacia in the instant matter or any other matter regarding the '582 Patent. *See Am. Home Prods.*, 985 S.W.2d at 81.

## V.       CONCLUSION

Defendants respectfully request that the Court: (1) disqualify Rutherford from any participation in this case; (2) disqualify Acacia's in-house legal department (including all persons acting in any legal capacity) from this case; and (3) disqualify the Collins Edmonds firm from this case.  Pursuant to Local Rule CV-7(g),  Defendants respectfully request an oral hearing on the issues presented herein.

Dated:  January 29, 2015.

Respectfully submitted,

/s/ R. William Beard, Jr.
Bruce W. Slayden II
State Bar No. 18496695
bslayden@kslaw.com
R. William Beard, Jr.
State Bar No. 00793318
wbeard@kslaw.com
Brian C. Banner
State Bar No. 24059416
bbanner@kslaw.com
**King & Spalding LLP**
401 Congress Avenue, Suite 3200
Austin, TX  78701
Telephone: (512) 457-2000
Facsimile: (512) 457-2100

**ATTORNEYS FOR DEFENDANTS
SCHLUMBERGER N.V.,
SCHLUMBERGER TECHNOLOGY
CORPORATION, AND M-I L.L.C.
D/B/A M-I SWACO**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-59(a) on January 29, 2015.

/s/ R. William Beard, Jr.
R. William Beard, Jr.

16

## CERTIFICATE OF CONFERENCE

Counsel has complied with the meet and confer requirement in Local Rule CV-7(h) and the motion is opposed.  On January 28, 2015, a personal conference was conducted between myself and Henry Pogorzelski.  Counsel for PSI had already received Schlumberger's 30-page motion to disqualify on January 23, wherein the Court ordered Schlumberger to re-file a 15-page brief.  On January 28, 2015, counsel met and conferred to discuss whether expert witness testimony would be offered to support the 15-page brief and further to discuss the motion.  No agreement concerning the motion was reached and the discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

*/s/ R. William Beard, Jr.*
R. William Beard, Jr.